DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER (State Bar No. 120162)
    kellisager@dwt.com
DAN LAIDMAN (State Bar No. 274482)
    danlaidman@dwt.com
SELINA MACLAREN (State Bar No. 300001)
    selinamaclaren@dwt.com
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

LOS ANGELES TIMES COMMUNICATIONS LLC
JEFF GLASSER (State Bar No. 252596)
2300 E. Imperial Highway
El Segundo, California 90245
Telephone: (213) 237-5000

Attorneys for Plaintiff
Los Angeles Times Communications LLC

[Additional counsel on following page]

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| LOS ANGELES TIMES COMMUNICATIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>Defendants. | No. 2:20-cv-10911-FLA (MRWx)<br><br>**JOINT STATUS REPORT AND PROPOSED BRIEFING SCHEDULE**<br><br>Status Conference:<br>   Date:   December 3, 2021<br>   Time:   1:30 p.m.<br><br><br>Hon. Fernando L. Aenlle-Rocha<br>United States District Judge |

TRACY L. WILKISON
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
MATTHEW J. BARRAGAN (Cal. Bar No. 283883)
MATTHEW J. SMOCK (Cal. Bar No. 293542)
Assistant United States Attorneys
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-2444
    Facsimile: (213) 894-7819
    E-mail: Matthew.Barragan@usdoj.gov
           Matthew.Smock@usdoj.gov

Attorneys for Defendants
U.S. Department of Homeland Security, DHS Office of Inspector General, and U.S. Immigration and Customs Enforcement

Los Angeles Times Communications LLC ("The Times" or "Plaintiff") and U.S. Department of Homeland Security ("DHS"), DHS Office of Inspector General ("DHS OIG"), and U.S. Immigration and Customs Enforcement ("ICE") (collectively, "Defendants"), through their respective counsel, respectfully submit this Joint Status Report pursuant to the Court's November 16, 2021 Order (Dkt. No. 32).

## I.  Joint Status Report

### A.  Plaintiff's Position

The parties agree that this matter likely will be resolved on summary judgment, and that it is appropriate for the parties to file cross motions, with Defendants moving first within 30 days after they deem their production of all responsive, non-exempt records to be complete. See Section II.  However, despite extensive meet-and-confer efforts, the parties are at an impasse regarding the pace of the production.

The Times submitted the FOIA requests at issue more than 16 months ago. Defendants did not respond to the requests, and did not begin producing any documents, until after The Times filed this lawsuit in December 2020.  The Times has been diligent about moving this case forward, but its efforts have been frustrated by the slow pace of production, and by Defendants' lengthy delays in providing even basic information.  For example, since March 2021, The Times has repeatedly asked for a page count of the records responsive to its requests for ICE OPR investigation closing reports, known as "redbooks."  This information was not provided for **eight months**.  Defendants now have stated for the first time that there are approximately 18,330 responsive pages that have not been processed at all, in addition to the thousands of pages that remain outstanding for the other requests at issue.

Defendants' proposed processing schedule of only 850 pages per month would delay the resolution of this matter for **an additional two years**.  That would be an especially egregious delay, given that the sixteen months that already have passed since The Times made its requests, and given the strong public interest in timely disclosure of these records.  Although the number of pages of outstanding records is significant, if

1

1  Defendants had responded in the timeframe required under FOIA and promptly begun
2  their processing of responsive records, the entire production would have been completed
3  by now.  Under these circumstances, the Court should order Defendants to process at
4  least 3,000 pages per month, so that the production can be completed and summary
5  judgment briefing can begin, if outstanding issues remain, by spring 2022.

6       As discussed further below, that requirement would be well within the range of
7  productions ordered by courts in comparable cases, and it is justified given the history of
8  this action (which already has been substantially delayed) and the public's significant
9  interest in the subject matter of the records, which will shed much-needed light on
10 DHS's handling of widespread accusations of sexual abuse, harassment, and misconduct
11 at ICE detention centers.

12                 1.     <u>Status Of Defendants' Document Production And Whether Any</u>
13                          <u>Requests Can Be Dismissed</u>

14      Given the outstanding issues with each of The Times' requests, none of them can
15 be dismissed from the case at this point.  As noted above, ICE still has not even
16 processed more than 18,000 pages responsive to The Times' Sixth and Seventh FOIA
17 Requests, for OPR redbooks.  See Dkt. # 29, First Amended Complaint ("FAC") ¶¶ 60-
18 83.  With respect to the First FOIA Request for underlying records from a 2019 DHS
19 OIG Report, DHS has produced only a small number of records; more than 4,000
20 additional pages have been referred to ICE for processing, none of which have been
21 provided to The Times.  Similarly, in response to the Second and Third FOIA Requests
22 for DHS OIG Reports of Investigations ("ROIs"), DHS has produced some records, but
23 has referred more than 1,100 additional pages to ICE for processing, none of which have
24 been provided to The Times.  See FAC ¶¶ 18-40.

25      Defendants' position is that they have completed their production in response to
26 the Fourth FOIA Request, for ICE OPR guidebooks, and the Fifth FOIA Request, for
27 records reflecting statistical information about misconduct complaints and investigations.
28 See FAC ¶¶ 41-59.  However, in both cases, the records that have been produced are not

2

fully responsive to The Times' requests, because they contain extensive redactions (some of which are without explanation), and the statistical information provided to date does not include facility-specific figures or a data dictionary that The Times requested, making the information difficult to interpret.

The parties are continuing to meet-and-confer about some of these issues, including the adequacy of the searches and the propriety of the redactions in the records that have been produced so far in response to all of the requests. If the parties are not able to resolve these issues in their meet-and-confer discussions they may be addressed at summary judgment.

### 2. Pace Of Production

Courts have made clear that "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses." Long v. IRS, 693 F.2d 907, 910 (9th Cir. 1982). "A court therefore may use its equitable powers to require the agency to process documents according to a court-imposed timeline." Clemente v. FBI, 71 F. Supp. 3d 262, 269 (D.D.C. 2014). See also Electronic Privacy Information Center v. DOJ, 416 F. Supp. 2d 30, 38 (D.D.C. 2006) ("courts have the authority to impose concrete deadlines on agencies that delay the processing of requests meriting expedition").

As set forth in the parties' Stipulation, Defendants have proposed a schedule that would require them to review only 850 pages per month, which would extend the production for approximately 22 additional months, with an estimated completion date of September 2023. See Dkt. # 31, Stipulation ¶ 9.

The Times respectfully requests that this Court order Defendants to process a minimum of 3,000 pages per month. Id., Stipulaton ¶ 10. The Times further requests that the Court order Defendants to produce all responsive, non-exempt records identified in each month's review by the 6th day of the next month (or by the next business day of the 6th of the month falls on a weekend or holiday), and to provide a log of any responsive records that are being withheld from production. Even under this schedule,

the production would take approximately six additional months to complete, with an estimated completion date of April 2022.

A processing schedule of at least 3,000 pages per month is well within the range of schedules ordered by courts in comparable FOIA cases. For example, in <u>Open Society Justice Initiative v. CIA</u>, 399 F. Supp. 3d 161 (S.D.N.Y. 2019), the court ordered both the State Department and Department of Defense to process 5,000 pages of records per month in a FOIA lawsuit seeking information about the death of journalist Jamal Khashoggi. <u>Id.</u> at 162. The agencies had claimed that they had a shortage of FOIA reviewers and that the schedule would "substantially impede" their ability to process other requests outside of the litigation. <u>Id.</u> at 166.

The court acknowledged the agencies' "resource constraints and competing priorities," but found that the 5,000-page schedule was appropriate given the importance of the records and the history of the litigation. <u>Id.</u> at 167. The court emphasized that the records involved a matter of significant public interest, as Khashoggi's death drew widespread media coverage and implicated issues of press freedom and the United States' relationship with Saudi Arabia. <u>Id.</u> at 167. And the court also noted that, as in this case, the defendants did not respond to the plaintiff within FOIA's statutory deadlines, and then waited many months to begin producing documents at all. <u>Id.</u> at 169. The agencies' delays "reinforced the need for a meaningful production schedule." <u>Id.</u>

Courts regularly issue similar orders requiring agencies to process thousands of pages per month in FOIA actions. E.g., <u>Seavey v. DOJ</u>, 266 F. Supp. 3d 241, 248 (D.D.C. 2017) (ordering production at a rate of "at least 2,850 pages per month" and finding this pace "well within the range of what other courts have ordered," despite agency's claim that 500 pages would be consistent with its policy); <u>Clemente v. FBI</u>, 71 F. Supp. 3d 262, 269 (D.D.C. 2014) (ordering agency to process 5,000 records a month); <u>Elec. Privacy Info. Ctr. v. FBI</u>, 933 F. Supp. 2d 42, 48-50 (D.D.C. 2013) (rejecting claim that "'exceptionally large number' of FOIA cases involving the agency currently in litigation" justified only processing 1,500 pages per month, and ordering significantly

higher volume in response to plaintiff's request); Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency, 811 F. Supp. 2d 713, 731 (S.D.N.Y. 2011) (ordering ICE to fully respond to an outstanding FOIA request that required producing over 14,000 pages in one month); Judicial Watch, Inc. v. Dep't of Energy, 191 F. Supp. 2d 138, 140-41 (D.D.C. 2002) (ordering agencies to process over 6,000 pages of material within 60 days); NRDC v. Dep't of Energy, 191 F. Supp. 2d 41, 43 (D.D.C. 2002) (ordering a complete production of 7,500 pages to be completed within 60 days).

Although Defendants are expected to assert that The Times' proposed schedule would tax their limited resources and divert attention from other FOIA requests, that is a situation largely of the agencies' own making. To the extent that there is now a bottleneck with a large number of outstanding records, that is because Defendants simply ignored The Times' FOIA requests when they were made almost eighteen months ago; even after The Times filed this lawsuit, Defendants delayed processing any records for many months. Earlier in the litigation, The Times proposed a schedule under which Defendants would process 2,000 pages per month. See Dkt. # 21, Joint Rule 26(f) Report at 6. Defendants proposed a 500-page schedule in response. Id. at 8. The Court declined to set a production schedule then, finding a lack of "sufficient information at this time regarding the potential scope of production." Dkt. # 24. However, the Court noted that "[f]ailure to produce non-exempt documents in a robust and timely manner may result in the imposition of sanctions." Dkt. # 24.

Five months later, there are still many thousands of pages of responsive records awaiting production. That includes more than 5,000 pages responsive to the First and Third FOIA Requests, and more than 18,000 pages of records responsive to the redbook requests that Defendants have only recently identified, despite months of requests from The Times for this information.[1] This is precisely the type of case in which the agencies'

---

[1] Although The Times officially added the redbook requests to this lawsuit in the First Amended Complaint, that does not justify Defendants' extreme delay in processing these records. The Times submitted the redbook requests at the same time as the other

1  significant delays have "reinforced the need for a meaningful production schedule."
2  Open Society Justice Initiative, 399 F. Supp. 3d at 169.

3   The substantial public interest in the records at issue also weighs in favor of The
4  Times' proposed production schedule.  The Times seeks records related to DHS's
5  policies and performance in addressing serious allegations of sexual abuse, harassment,
6  and misconduct at ICE detention centers.  Dkt. # 29, FAC ¶ 1.  These centers detain an
7  average of 50,000 men, women, and children on any given day, at an annual cost to
8  taxpayers of $2.7 billion.  Id. ¶¶ 12-13.  Detainees are held in civil custody while their
9  immigration claims or proceedings are pending, which can last weeks or even years.  Id.
10 A Times investigation published last October found that California police received at
11 least 265 calls since 2017 reporting allegations of violence and abuse inside four
12 detention centers overseen by ICE, half of which involved alleged sex crimes.  See
13 Andrea Castillo & Paloma Esquivel, "California police got hundreds of calls about abuse
14 in private ICE detention centers. Cases were rarely prosecuted," Los Angeles Times
15 (Oct. 18, 2020), available at https://www.latimes.com/california/story/2020-10-
16 18/california-police-immigration-detention-abuse.  See also FAC ¶¶ 13-14.

17  Other news outlets have reported on similar allegations of abuse and harassment
18 all across the country, and raised questions about DHS' response.  E.g., Arlene Martinez,
19 "ICE detention centers rife with abuse, investigation finds," USA Today (Dec. 23, 2019),
20 available at https://www.usatoday.com/story/news/nation/2019/12/23/ice-detention-
21 centers-rife-abuse-investigation-finds/2736084001/; Matthew Haag, "Thousands of

---

23 requests at issue, in June and July of 2020, and only omitted them from the original
24 complaint because they still were the subject of an administrative appeal at the time this lawsuit was filed, in December 2020.  See Dkt. # 29, FAC ¶¶ 60, 66.  On March 18, 2021, an ICE FOIA officer informed a Times reporter that any records responsive to the
25 redbook requests would be "disclosed officially through your … lawsuit" – in other words, ICE and DHS refused to take any action on these requests outside of the pending
26 lawsuit.  Since March 2021, counsel for the parties have been conferring about these requests as part of this litigation.  Id. ¶¶ 69-70.  As part of these meet-and-confer efforts,
27 The Times specifically requested information to evaluate the volume of responsive records for these requests, but Defendants did not provide that information for **eight**
28 **months**, and apparently did not begin processing any of these records until very recently.  Id. ¶¶ 68-69; Dkt. # 31, Stipulation at p. 2.

Immigrant Children Said They Were Sexually Abused in U.S. Detention Centers, Report Says," New York Times (Feb. 27, 2019), available at https://www.nytimes.com/2019/02/27/us/immigrant-children-sexual-abuse.html.

As part of the ongoing national debate about this issue, members of Congress have held oversight hearings, and called for policy reforms and the closure of detention centers.  E.g., House Homeland Security Committee, "Oversight of ICE Detention Facilities: Is DHS Doing Enough?" (Sept. 26, 2019), available at https://www.congress.gov/event/116th-congress/house-event/LC65207/text?s=1&r=2; California Collaborative for Immigrant Justice, Press Release:  "24 Members of Congress led by Lofgren and Correa urge closure of 3 ICE detention centers in CA" (Oct. 21, 2021), available at https://ccijustice.org/breaking-24-members-of-congress-led-by-lofgren-and-correa-urge-closure-of-3-ice-detention-centers-in-ca/.

Adopting Defendants' proposed processing schedule of 850 pages per month would delay the completion of the production for at least two more years, depriving the public of important information at a time when this issue still is at the forefront of the public debate.  See Washington Post v. DHS, 459 F. Supp. 2d 61, 74 (D.D.C. 2006) (noting that under FOIA, "stale information is of little value") (citation omitted).  The demonstrated public interest in these records, which The Times is seeking to disseminate related information to the public about a subject of ongoing national debate, weighs strongly in favor of The Times' proposed schedule.  See Open Society Justice Initiative, 399 F. Supp. 3d at 167 (public interest in the records at issue outweighed agency's claims of burden where the underlying subject matter "was front-page news" when the requests were made, and "continued to be a matter of intense interest among the public, legislators, other policymakers, and journalists").[2]

---

[2] Courts in FOIA actions "have considered the urgency of a requester's need when setting a production schedule even when the requester did not seek expedited processing."  Sierra Club v. EPA, 2018 WL 10419238, at *6 (N.D. Cal. Dec. 26, 2018) (citing Clemente, 71 F. Supp. 2d at 265).

7

**B.     Defendants' Position**

On December 1, 2020, The Times brought this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C.§ 522 *et seq.*, seeking the release of records concerning DHS's policies and performance in addressing allegations of sexual abuse, harassment, and misconduct at ICE detention centers. Dkt. No. 1. The Times filed its First Amended Complaint on September 2, 2021 (Dkt. No. 29), and Defendants filed their Answer on September 16, 2021 (Dkt. No. 30). Since then, the parties have been engaged in continuing discussions regarding the scope of the FOIA requests, the pace of production, and interim releases of records.

### 1.     Background and Status of Defendants' Response to The Times' FOIA Requests

There are seven FOIA requests currently being litigated in this matter.

a.     <u>FOIA No. 2020-IGFO-00153 (the "First FOIA Request")</u>

On June 29, 2021, The Times submitted a FOIA request to DHS OIG seeking all underlying records for a 2019 DHS OIG report titled, "Oversight Review and Customs Enforcement, Office of Professional Responsibility, Investigations Division" (First FOIA Request). DHS OIG acknowledged receipt of the First FOIA Request on August 11, 2020.

DHS OIG confirms that 1,485 pages were under review by their office, approximately 4,364 pages were referred to ICE directly for processing, approximately 624 pages were sent to ICE for consultation, and approximately 298 pages were referred to U.S. Customs and Border Protection ("CBP") for processing.

On July 12, 2021, DHS OIG made its final production of the approximately 1,485 pages under its review. On September 25, CBP made its final production of the approximately 298 pages under its review.

ICE confirms that its review of the approximately 4,364 pages directly referred to it is complete.

///

      b.  FOIA No. 2020-IGFO-00175 (the "Second FOIA Request")

On July 20, 2020, The Times submitted a FOIA request to DHS OIG seeking all DHS OIG Report of Investigations ("ROIs") relating to allegations at dedicated Enforcement and Removal Operations ("ERO") facilities that have been previously released under FOIA (Second FOIA Request). DHS OIG acknowledged receipt of the Second FOIA Request on August 19, 2020.

On March 17, 2021, DHS OIG communicated that it conducted a diligent search for ROIs dated January 1, 2015 to the date of processing, relating to allegations at dedicated ERO facilities, that have been previously released under the FOIA. No previously released DHS OIG ROIs from this time period were located after a diligent search.

      c.  FOIA No. 2020-IGFO-00154 (the "Third FOIA Request")

On June 29, 2020, The Times submitted a FOIA request to DHS OIG seeking all DHS OIG ROIs relating to allegations at dedicated ERO facilities from January 1, 2013, to the date the Request is Processed (Third FOIA Request). DHS OIG acknowledged receipt of the Third FOIA Request on July 2, 2020.

On April 9, 2021, DHS OIG made a release of records. 103 pages were released in full, 316 pages were released in part, 115 pages were withheld in full, and 130 pages were referred (124 to ICE, 4 to CBP, and 2 to the U.S. Postal Service). On May 27, 2021, DHS OIG submitted the following narrowing proposal: DHS OIG will search for search for any responsive ROIs during the requested period (2013-2020) using the 44 detention facilities The Times specified. On August 5, 2021, CBP made a release of its portion of referred records. The Times accepted DHS OIG's narrowing proposal on July 14, 2021. On October 29, 2021, DHS OIG made a final release. 231 pages were released in full, 475 pages were released in part, 41 pages were withheld in part, 1,159 pages were referred to ICE, 1 page was referred to U.S. Department of Justice ("DOJ"), and 21 pages were referred to USCIS, and 7 pages were referred to CBP. DOJ anticipates responding within 45 days.

9

JOINT STATUS REPORT AND PROPOSED BRIEFING SCHEDULE
CASE NO. 2:20-CV-10911-FLS(MRWX)
4890-1896-0388v.3 0201257-000003

1                  d.         <u>FOIA No. 2020-ICFO-59244 (the "Fourth FOIA Request")</u>

On June 29, 2020, The Times submitted a FOIA request to ICE seeking any investigative guidebook(s) and/or handbook(s) for ICE's Office of Professional Responsibility ("OPR"), including but not limited to ICE "OPR Investigative Guidebook" (Fourth FOIA Request). ICE acknowledged receipt of the Fourth FOIA Request on June 30, 2020. On February 26, 2021, ICE made its initial release. ICE made a final release of records on May 10, 2021.

                 e.         <u>FOIA No. 2020-ICFO-62076 (the "Fifth FOIA Request")</u>

On June 29, 2020, The Times submitted a FOIA request to ICE seeking the following information: (a) Total number of complaints entered into the Joint Integrity Case Management System ("JICMS") by reporting year; (b) Total number of misconduct cases reported to local management and entered into the Human Resources Business Engine ("HRBE") by reporting year; and (c) Total number of complaints in JICMS that resulted in investigations by reporting year (Fifth FOIA Request). ICE acknowledged receipt of the Fifth FOIA Request on July 9, 2020.

On February 26, 2021 ICE released a spreadsheet with the requested information. On May 10, 2021, ICE provided The Times with a regional breakdown of the requested information. The Times has requested a description of the various complaint categories.

                 f.         <u>FOIA No. 2020-ICFO-59229 (the "Sixth FOIA Request")</u>

On June 29, 2020, The Times submitted a FOIA request to ICE seeking the following information: from January 1, 2013 to the date of processing the Sixth FOIA Request: All ICE OPR investigation closing reports, also known as "redbooks" or "red books," related to assault, sexual abuse, or harassment allegations at dedicated ERO facilities (Sixth FOIA Request). On March 4, 2021, ICE produced a spreadsheet listing 190 redbooks. The Times requested redbooks to be produced in a different format. ICE anticipates that it will complete this additional production of the previously released 190 redbooks potentially responsive to the Sixth FOIA Request by late November 2021.

ICE requires additional time to process exhibits to the redbooks. ICE estimates

that there are 18,330 pages of exhibits to the redbooks. The ICE FOIA Litigation Processing Unit is currently processing 159 active FOIA litigations as of the date of this filing, this yields a monthly litigation review of between 25,000-30,000 pages and an average of 13,700 pages released every month. ICE's normal processing rate for cases in litigation is 500 pages per month, per case. Due to staffing limitations and a high volume of litigations and requests, ICE in good faith agrees to review 850 pages per month and produce any responsive, nonexempt material. At this rate, the production could take roughly twenty-two (22) additional months to complete, with an estimated end date of September 2023. The ICE FOIA Office currently has a backlog of 3,675 FOIA cases, 4,249 open FOIA cases and 159 active litigations.

Alternatively, ICE proposes that The Times narrow the scope of exhibits requested once it receives and reviews all 190 redbooks from the November 2021 production to avoid lengthy production timelines and to conserve government resources.

g. FOIA No. 2020-ICFO-66549 (the "Seventh FOIA Request")

On July 20, 2020, The Times submitted a FOIA request to ICE seeking all ICE OPR investigation closing reports, also known as "redbooks" or "red books," related to allegations at dedicated ERO facilities that have been previously released under the Freedom of Information Act (this is colloquially known as a 'piggyback' request) (Seventh FOIA Request). As noted above, on March 4, 2021, ICE produced a spreadsheet listing 190 "Redbooks." ICE anticipates that it will complete its production of 190 "Redbooks" potentially responsive to the Seventh FOIA Request by late November 2021 and requires additional time to process exhibits to the Redbooks.

**2. Proposed Review and Production Schedule**

Since the parties cannot agree on a production schedule in this case, they submit competing proposals for next steps.[3]

---

[3] While the parties are unable to reach an agreement on a production schedule in this case, they agree that the opening summary judgment motion should be filed after the final production is completed.

Although The Times has identified some FOIA cases in which agencies have been ordered to process up to 5,000 pages per month, *see Open Soc'y Justice Initiative v. CIA*, 399 F. Supp. 3d 161, 162 (S.D.N.Y. 2019); *Clemente v. FBI*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014), those cases are outliers. Much more commonly, courts require agencies to process outstanding responsive records at a rate of 500 or fewer pages per month. *See Nat'l Sec. Counselors v. U.S. Dep't of Justice*, 848 F.3d 467, 471-72 (D.C. Cir. 2017) ("By processing requests in 500-page increments, the [FBI's] policy ultimately provides more pages to more requesters, avoiding situations in which a few, large queue requests monopolize finite processing resources."); *Chaverra v. U.S. Immigration & Customs Enf't*, No. 18-289, 2020 WL 7419670, at *1 (D.D.C. Nov. 5, 2020) (ordering 500 pages per month and collecting similar cases); *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 470 F. Supp. 3d 32, 39 (D.D.C. 2020) (ordering 400 pages per month pursuant to a preliminary injunction under FOIA in a COVID-related case); *Daily Caller News Found. v. FBI*, 387 F. Supp. 3d 112, 121 (D.D.C. 2019) (ordering 500 pages per month and rejecting plaintiffs' request for 1,200 pages per month); *Middle E. Forum v. U.S. Dep't of Homeland Sec.*, 297 F. Supp. 3d 183, 185–86 (D.D.C. 2018) (ordering 500 pages per month and rejecting plaintiffs' request for 1,000 pages per month, and collecting similar cases); *Republican Nat'l Comm. v. U.S. Dep't of State*, No. 16-486, 2016 WL 9244625, at *1 (D.D.C. Sept. 16, 2016) (ordering 500 pages per month); *see also Clemente*, 71 F. Supp. 3d at 269 ("Clemente's request that the FBI process 5,000 pages a month is higher than the rate would be in an ordinary case ....").

In this case, ICE agrees to review 850 pages per month and produce any nonexempt material. Furthermore, ICE has kept in constant communication with The Times as to any expected delays, trying to narrow the issues, and working on the entire litigation. Defendants respectfully request 22 months to complete their review of the approximately 18,330 pages of remaining records in this matter. Defendants will continue to confer with The Times' counsel to determine whether any disputes over the

search or any withholdings can be resolved in lieu of proceeding to motions practice.[4]

Accordingly, Defendants respectfully request that the Court adopt the following briefing schedule:

| Action | Date Completed |
|---|---|
| Defendants will file and serve a Motion for Summary Judgment | October 30, 2023 |
| Plaintiff will file any Cross-Motion for Summary Judgment and Opposition to Defendants' Motion | November 29, 2023 |
| Defendants will file a Reply/Opposition | December 20, 2023 |
| Plaintiff will file any Reply | January 10, 2024 |
| Hearing on Cross-Motions | January 26, 2024 at 1:30 p.m. |

## II. Proposed Briefing Sequence

The parties agree that all issues in this FOIA action likely can be decided and fully resolved on summary judgment. The parties agree to confer through counsel to see if any disputes over the search terms or any withheld or redacted material can be resolved before proceeding to motions practice, including summary judgment.

As set forth in the parties' Stipulation, if any unresolved issues in this case proceed to summary judgment, given the unique nature of FOIA litigation it would be appropriate for the parties to file cross motions, with the government moving first. See

---

[4] In FOIA cases, the agency will typically identify the withheld documents and the basis on which they are being withheld by submitting a declaration(s). These declarations or affidavits (singly or collectively) are often referred to as a *Vaughn* Index, after the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564 (1974). *See also, Wiener v. FBI*, 943 F.2d 927 at 978, n.6 (9th Cir. 1991), cert. denied, 505 U.S. 1212 (1992) ("[w]e refer to these affidavits [of FBI agents and CIA officers] collectively as the *Vaughn* index"). "A *Vaughn* index must: (1) identify each document withheld; (2) state the statutory exemption claimed; and (3) explain how disclosure would damage the interests protected by the claimed exemption." *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d at 1326 n.1. *See also Minier v. CIA*, 88 F.3d 796, 799 (9th Cir. 1996)("[t]he agency may meet its burden by submitting a detailed affidavit showing that the information 'logically falls within the claimed exemptions.'").

Dkt. # 31, Stipulation ¶ 6.  Although the parties have not agreed on a production schedule and a date for the filing of the initial summary judgment, the parties respectfully request that the Court adopt the following briefing sequence for cross-summary judgement motions:

| Action | Date Completed |
|---|---|
| Defendants' Motion for Summary Judgment to be filed. | 30 days after Defendants notify Plaintiff that the final production is completed. |
| Plaintiff's Cross-Motion for Summary Judgment and Opposition to Defendants' Motion to be filed. | 30 days after Defendants file their Motion for Summary Judgment. |
| Defendants' Reply/Opposition to be filed. | 21 days after Plaintiff files its Cross-Motion. |
| Plaintiff's Reply to be filed. | 21 days after Defendants file their Reply/Opposition. |
| Hearing on Cross-Motions | 14 days after Plaintiff files its Reply or the first available date thereafter on the Court's calendar. |

Dated:  November 19, 2021        DAVIS WRIGHT TREMAINE LLP

 /s/ Dan Laidman
DAN LAIDMAN *

Attorneys for Plaintiff
Los Angeles Times Communications LLC

Dated:  November 19, 2021

TRACY L. WILKISON
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section

 */s/ Matthew J. Barragan*
MATTHEW J. BARRAGAN
MATTHEW J. SMOCK
Assistant United States Attorneys

Attorneys for Defendants
U.S. Department of Homeland Security, DHS Office of Inspector General, and U.S. Immigration and Customs Enforcement

*Pursuant to Local Rule 5-4.3.4(2), the filer attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.