```
 1  TRACY L. WILKISON
    United States Attorney
 2  DAVID M. HARRIS
    Assistant United States Attorney
 3  Chief, Civil Division
    JOANNE S. OSINOFF
 4  Assistant United States Attorney
    Chief, General Civil Section
 5  MATTHEW J. BARRAGAN (Cal. Bar No. 283883)
    MATTHEW J. SMOCK (Cal. Bar No. 293542)
 6  Assistant United States Attorneys
         Federal Building, Suite 7516
 7       300 North Los Angeles Street
         Los Angeles, California 90012
 8       Telephone: (213) 894-2444
         Facsimile: (213) 894-7819
 9       E-mail: Matthew.Barragan@usdoj.gov
                 Matthew.Smock@usdoj.gov
10
    Attorneys for Defendants
11  U.S. Department of Homeland Security, DHS
    Office of Inspector General, and U.S.
12  Immigration and Customs Enforcement
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LOS ANGELES TIMES COMMUNICATIONS LLC,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>　　　　Defendants. | No. CV 20-10911-FLA (MRWx)<br><br>**DECLARATION OF LYNNEA SCHURKAMP** |

# DECLARATION OF LYNNEA SCHURKAMP

I, Lynnea Schurkamp, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Deputy FOIA Officer of the Freedom of Information Act Office (the "ICE FOIA Office") at U.S. Immigration and Customs Enforcement ("ICE"). The ICE FOIA Office is responsible for processing and responding to all Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *amended by* the OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524, and Privacy Act of 1974 (the "Privacy Act"), 5 U.S.C. § 552a, requests received at ICE. I have held this position since August 1, 2021. I am the ICE official responsible for supervising ICE responses to requests for records in litigation as well as incoming FOIA requests to ICE under the FOIA, the Privacy Act, and other applicable records access statutes and regulations. Prior to this position, I was the Assistant Disclosure Officer of the U.S. Secret Service FOIA Intake Team from July 21, 2019 to July 31, 2021. Prior to that I was the FOIA Program Manager/Litigation Coordinator for the National Organic Program in the Agricultural Marketing Service, U.S. Department of Agriculture for one year.

2. My official duties and responsibilities include the oversight and supervision of the ICE FOIA Litigation and Intake Teams. The Intake Team is responsible for acknowledging the receipt of all FOIA and Privacy Act requests at ICE. This team also conducts searches for responsive records. The Litigation Team is responsible for picking up the case when a complaint is filed and seeing it through to completion. Depending on what is alleged in the complaint, the Litigation Team will conduct a search, gather responsive records, go through the records for responsiveness, process productions, and release records with applicable withholdings to the plaintiff or plaintiff's counsel. I manage and supervise the supervisors of the Intake and Litigation Teams. These teams are comprised of FOIA Assistants and Paralegal Specialists. Due to my experience and the nature of my official duties, I am familiar with ICE's procedures for responding to requests for information pursuant to provisions of the FOIA and the Privacy Act.

1

3. I make this declaration in my official capacity based on my personal knowledge, my review of records kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

I. **RECENT STATISTICS REGARDING FOIAS SUBMITTED TO ICE**

4. As of January 10, 2022, the ICE FOIA Office is processing approximately 6,700 open FOIA requests addressing a backlog of 5,916 requests.[1] There were approximately 160 open federal district court cases, and 65 cases in active record production. While the number of pages processed and released fluctuate each month, for snapshot purposes, in December 2021 ICE FOIA processed approximately 23,261 pages of records and released 12,019 pages to requesters/plaintiffs.

5. Beginning in fiscal year ("FY") 2018, the ICE FOIA Office experienced a substantial and dramatic increase in the number of FOIA requests received by ICE compared to previous years. In FY 2015, the ICE FOIA Office received 44,748 FOIA requests; 63,385 FOIA requests were received in FY 2016. The number of requests received briefly decreased in FY 2017 to 47,893 but was then followed by a spike of 70,267 FOIA requests in FY 2018. In FY 2019, that number climbed to a total of 123,370 requests received and in FY 2020 the ICE FOIA Office received 114,475 FOIA requests.

6. Between FY 2017 and FY 2020, the ICE FOIA Office experienced approximately a 240% increase in FOIA requests. This dramatic increase in ICE FOIA's workload is attributed to an increase in the number of referrals ICE received from USCIS and the increased public interest in the Department's operations as they pertain to recent Presidential and/or Executive Orders and subsequent guidance from the Secretary of Homeland Security. According to Syracuse University's FOIA Project, during the month of November 2021, federal district courts saw a total of 56 new FOIA lawsuits

---

[1] Backlog case are those that have been pending for over 20 days.

filed under 5 U.S.C. 552. As of December 14, 2021, the total overall reported FOIA filings for the last 12 months were 652.[2]

## II.   ICE FOIA OFFICE'S STAFF LEVELS AND WORKLOAD

7.  In addition to the increasing volume of FOIA requests, ICE has also experienced an increase in the complexity of FOIA requests, both in terms of volume and substance. For example, it is now not uncommon to see FOIA requests with 50 to 60 sub-parts comprising several pages, searches of numerous program offices, and a universe of records that has thousands of pages to review and process. These FOIA requests take considerably longer to process due to extensive searches and the intricacy of the documents and/or data produced. In FY 2019, one FOIA requester alone – a data clearing house – filed more than 370 FOIA requests seeking extensive data extracts. In FY 2020, the same requester filed more than 480 similar FOIA requests.

8.  All these factors have nearly doubled the ICE FOIA Office's overall workload since FY 2017. In response to the increasingly heavy workload, the ICE FOIA Office has adopted the court-sanctioned practice of generally handling backlogged requests on a "first-in, first-out basis," which ensures fairness to all FOIA requestors by not prioritizing one request over another. This practice applies to requests that are in litigation. The reason for this is that the principle of fairness to all requestors would be jeopardized were a requestor permitted to "jump the line" simply by virtue of filing a case in U.S. District Court. Generally, the only exception to this is where a court orders processing at rates above the ICE FOIA Office's current processing rate for all cases. In FY 2020, the ICE FOIA Office closed 79,081 cases and 17,060 referrals from USCIS.

9.  The ICE FOIA Office currently has 20 FOIA specialists dedicated to processing FOIA requests solely at the administrative level. The processors are responsible for responding to the original FOIA requests and, if necessary, reprocessing

---

[2] The FOIA Project Freeing Information through Public Accountability (December 14, 2021) http://foiaproject.org/2021/12/14/november-2021-foia-litigation-with-five-year-monthly-trends/.

3

remands on appeal. In FY 2020, these FOIA processors completed and closed out 79,081 FOIA requests.

10. Additionally, the ICE FOIA Office has the Litigation Processing Unit comprised of experienced paralegal specialists who are exclusively entrusted with processing records in litigation under FOIA and the Privacy Act.

11. From November 2020 to March 2021, the ICE FOIA Litigation Processing unit was staffed with only three full-time paralegals and one of the paralegals served as the acting supervisor. The paralegal who temporarily assumed the supervisory role had limited time to process records for production. In March 2021, an additional paralegal returned to the unit, increasing the staff to only four full-time paralegals. Nevertheless, the paralegal who performed the supervisory duties in November 2020 continued to serve in the managerial role until May 2021, when a full time supervisory paralegal was onboarded. The supervisory paralegal performed duties until July 2021 and then took extended leave. The ICE FOIA Litigation Processing Unit operated with three full time paralegals without a supervisor until August 1, 2021. Since November 2021, the team has reverted to working with only three full-time paralegals.

### III. CURRENT WORKLOAD OF THE ICE FOIA LITIGATION PROCESSING UNIT

12. A consequence of the increasing complexity and volume of ICE FOIA's workload (*see* paragraphs 5-9) and backload is that more of those FOIA requests become subject to litigation in U.S. District Court.

13. The ICE FOIA Litigation Processing Unit's workload has increased such that it is currently processing approximately 160 active FOIA litigations as of the date of this declaration (up from 146 cases), and of which approximately 65 have rolling productions. This yields a monthly litigation review of between 25,000-30,000 pages and an average of 13,700 pages released every month. ICE's normal processing rate for cases in litigation is 500 pages per month, per case, but based on current workload, ICE's processing rate has increased to approximately 150 to 180 pages per month per case and

4

approximately 8,000 to 10,000 pages per month per paralegal. Additionally, there are cases added each month which increase the case list and resulting productions. With the monthly additions, the 3 full-time paralegals currently employed within the ICE FOIA Litigation Processing Unit will be required to process nearly 40,000 pages per month and in excess of 13,000 pages per month per paralegal. These page-count numbers do not take into account the additional FOIA lawsuits that require a single versus rolling production.

14. The ICE FOIA Litigation Processing Unit also drafts, assigns, and tracks any and all searches for responsive documents concerning FOIA litigations. The FOIA litigation search taskings frequently span dozens of ICE program and field offices and require the Unit to keep track of hundreds of thousands of responsive records, as well as all of the program offices' search documentation.

15. The ICE FOIA Litigation Processing Unit has collateral duties, in addition to processing documents pursuant to litigation. For example, the processing unit prepares various reports for statical tracking responds to Congressional inquiries, redacts Prison Rape Elimination Act and Office of Detention Oversight reports, send out FOIA (b)(4) submitter notices on relevant cases, and manages consults and referrals from other agencies as they are received. Additionally, the processing unit supports attorneys in the ICE Office of the Principal Legal Advisor with federal FOIA litigation, by assisting in the creation of *Vaughn* indexes, reviewing declarations and coordinating on joint status reports to the court.

16. The ICE FOIA Litigation Processing Unit also manages a host of administrative duties, including (but not limited to) monitoring the ICE FOIA inbox (which receives from 12,000-18,000 emails annually), processing all classified consults and referrals, scheduling productions, preparing clearance e-mails, and corresponding with requesters.

17. Each member of the ICE FOIA Litigation Processing Unit processes records daily but the amount of pages processed significantly varies depending on the

complexity of the records, and they are still required to keep up with their collateral and administrative duties.

18. In order to meet its obligations for all cases in litigation by ensuring that all of the FOIA matters progress, and each requester receives a response, the ICE FOIA Office typically cannot process more than 500 pages per month per case. Any increase in production for one case will inevitably hinder ICE FOIA's ability to process records for production in other matters.

19. Moreover, the ICE FOIA Office typically cannot *produce* a set number of pages per month. Depending on the volume of records located in the search tasking phase of the administrative stage and/or FOIA litigation, if the Court would order ICE FOIA to *produce rather than a review/process* a certain number of pages per month, it is entirely plausible that the processors would have to review hundreds, or even thousands, of additional pages on top of the 500 pages that are attainable, in order to get to the requisite *production* number. ICE FOIA is incapable of achieving this outcome based on finite resources competing priorities, litigation and non-litigation deadlines, and the sheer volume of overall work.

## IV. PROGRESS ON THE INSTANT CASE

20. ICE has conducted multiple searches in response to Plaintiff's multiple FOIA requests in this current lawsuit. On February 26, 2021, the ICE FOIA office made its final releases of records for the "Fourth FOIA Request" (2020-ICFO-59244) and "Fifth FOIA Request" (2020-ICFO-62076), which included processing of 132 pages.

21. Plaintiff challenged productions and requested additional information for the "Fifth FOIA Request" (2020-ICFO-62076). On February 26, 2021, ICE produced a chart of detailing number of complaints entered into its Joint Integrity Systems Management System ("JICMS") from years 2008 to present. The chart included geographic locations and breakdown of categories of incidents present by category and location. However, Plaintiff requested an additional breakdown of geographic locations by state listed in the chart. In good faith, the ICE FOIA office conducted a search and re-

released the February 26, 2021, production with the additional breakdown of geographic locations by state (vs region) on May 10, 2021.

22. The "Sixth FOIA Request," 2021-ICAP-00027/2020-ICFO-59229, was added to an amended complaint filed by Plaintiff on September 2, 2021. In previous talks with Plaintiff regarding the Sixth FOIA Request (not originally included in initial complaint filed by Plaintiff on December 20, 2020), ICE, in good faith, searched for responsive records and produced to Plaintiffs on March 10, 2021, an Excel spreadsheet identifying and describing "redbooks," (reports of investigations) which ICE understood to be what Plaintiff was seeking and was in the preferred format requested by Plaintiff. Following this production, Plaintiff requested a different format, namely, production of the 191 "redbooks" themselves that were identified in the spreadsheet. The ICE FOIA office then reviewed and produced 617 pages of "redbooks" on September 23, 2021; reviewed and produced the remaining 1,713 pages of "redbooks" on December 1, 2021.

23. Following receipt of the "redbooks" Plaintiff then demanded production of the exhibits to the 191 "redbooks." The ICE FOIA Office searched and located roughly 18,330 pages. In an attempt to narrow and expedite processing, the ICE FOIA Office reviewed and produced a 314 page sample of case exhibits to Plaintiff on December 29, 2021. In a meet and confer with Plaintiff on January 6, 2022, Plaintiff refused to narrow its request for additional information related to the redbooks.

24. Additionally, The ICE FOIA office reviewed 4,407 pages referred from the Office of Inspector General ("OIG") under the "First FOIA Request," 2020-IGFO-00153, and produced all appropriate responsive records not subject to withholdings on December 22, 2021.

25. The ICE FOIA office is also currently processing remaining consults from OIG under the "Third FOIA Request," 2020-IGFO-00154, approximately 1,283 pages.

26. Due to the FOIA Office's limited resources, requiring ICE to process significantly more pages per month in this case, which would divert resources to Plaintiff's FOIA requests at the expense of other FOIA requesters. Despite all of the

factors discussed above, ICE reiterates that this matter is a top priority. ICE respectfully requests that the Court amend the current scheduling order to allow the agency to process 1,500-1,700 pages per month moving forward.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

      Executed on January 14, 2022, at Washington, D.C.

_____
Lynnea Schurkamp Deputy FOIA Officer
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009