TRACY L. WILKISON
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
MATTHEW J. BARRAGAN (Cal. Bar No. 283883)
MATTHEW J. SMOCK (Cal. Bar No. 293542)
Assistant United States Attorneys
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-2444
    Facsimile: (213) 894-7819
    E-mail: Matthew.Barragan@usdoj.gov
          Matthew.Smock@usdoj.gov

Attorneys for Defendants
U.S. Department of Homeland Security, DHS Office of Inspector General, and U.S. Immigration and Customs Enforcement

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LOS ANGELES TIMES COMMUNICATIONS LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>    Defendants. | No. CV 20-10911-FLA (MRWx)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO AMEND SCHEDULING ORDER**<br><br>Hearing Date:  March 4, 2022<br>Hearing Time:  1:30 P.M.<br>Ctrm:  6B<br><br>Hon. Fernando L. Aenlle-Rocha<br>United States District Judge |

## I. INTRODUCTION

In its opposition, Plaintiff expends most of its effort attempting to recharacterize Defendants' Motion as something that it plainly is not. And Plaintiff does not and cannot explain why a processing rate of 1,500 would materially prejudice Plaintiff:

- Plaintiff's request for production of *every exhibit* to *every redbook* was made recently and entails review of a very high volume of records (approximately 18,000 pages);
- Plaintiff received a final response many months ago that provided information concerning the entire set 190 redbooks (in the Excel format originally requested), and then, upon further request, all 190 redbooks themselves. Yet, Plaintiffs continue to change the scope and format of their request, and Defendant has agreed to comply. Now, with all the information it needs to narrow the outstanding redbook exhibit request and receive the documents it actually needs sooner, Plaintiff has declined to do so to date;
- Plaintiff contends it is entitled to expedited processing due to its status as a news provider, but does not explain why a pace triple that of ICE's normal processing rate is not sufficient.

For these reasons, the reasons stated in the Motion, and those noted below, Defendants respectfully request that the Court modify the Scheduling Order (Dkt. 35) to require the processing of 1,500 pages per month and to complete all review by December 2, 2022.

## II. ARGUMENT

### A. The Motion Is Not a Motion for Reconsideration

Plaintiff spends the bulk of its opposition attempting to recharacterize a motion it did not bring as a motion for reconsideration. Plaintiff's attempt at recharacterization fails. Defendants' motion is properly characterized as a Motion to Amend Scheduling Order.

As an initial matter, were the Court to accept Plaintiff's logic, there would be no

such thing as a motion to amend scheduling order. In virtually every civil case, as here, a court issues an initial scheduling order. And, where as here, a party requests an "amendment" to that initial scheduling order, the court considers making some modification, changes, or "amendments" to that initial scheduling order. Scheduling orders are not set in stone, and often subject to amendment. *See, e.g.*, *Fairchild v. Peak Med. Corp.*, 2010 WL 845974, at *2 n.4 (N.D. Ok. Mar. 5, 2010) ("This Court considers and often grants motions to amend a scheduling order in the event one or both parties deems the Court's original schedule 'unworkable.'"). Courts, including in this District, frequently modify them upon request for "good cause" shown. *See, e.g.*, *Fisher and Paykel Healthcare Ltd. V. Flexcare Inc.*, 2020 WL 7094074, *1, *4 (C.D. Cal. July 30, 2020) (granting opposed motion to extend case deadlines by four months to allow moving party to complete discovery); *Gunaratna v. Dennis Gross Cosmetology LLC*, 2021 WL 6103076, at *2 (C.D. Cal. Nov. 10, 2021) (granting opposed motion to extend all class certification deadlines in scheduling order by ninety days in order to, among other reasons, allow for completion of document productions). That would certainly not be the case were such requests to amend scheduling orders deemed subject to the requirements for motions to reconsider.

      Moreover, as Plaintiff points out, motions for reconsideration must be filed within fourteen days of an order. *See* Dkt. 43 at 16. Defendants opted not to burden the Court with an immediate (or any) motion to reconsider its December 3 Order at that time. Instead, Defendants' response to the Court's December 3 Order was to make a good faith effort to comply with it (which Defendants continue to do through the date of this filing). This Motion was not made until *after* ICE commenced its efforts to comply with the Court's December 3 Order, and after undersigned counsel had an opportunity to further confer with ICE concerning its practical limitations in complying with it.

      Finally, Plaintiff cannot have it both ways in arguing that the Motion was brought too late and that Defendants have failed to present the Court with any new information. Defendants *have* presented the Court with additional information not available to it or

Defendants at the time the parties submitted their last joint status report. Specifically, Defendants presented evidence, as of *January 10, 2022*, of the ICE FOIA Office's increased backlog of 5,916 requests, increased number of 6,700 open FOIA requests, increased number of open federal district court cases (160), and increased number of cases in active record production (65). See Schurkamp Decl., ¶ 4.

### B. The Public Interest Does Not Justify 3,000 Pages Per Month

In its opposition, Plaintiff argues at length that its position as a news provider entitles it to "expedited" processing. ICE receives thousands of FOIA requests from nonprofits, news providers and individuals, and due to the nature of ICE's work and role as law enforcement agency, all requests are seen as vital to the public interest. But what Plaintiff ignores is that the proposed processing rate of 1,500 pages per month *is* significantly expedited—*three times* that of ICE's normal rate. Under Defendants' proposal, and at the expense of other FOIA requesters, Plaintiff's FOIA requests would indeed "take precedence over processing other non-expedited FOIA cases." Dkt. 43 at 20-21. Plaintiff's position as a news provider and the nature of the records sought must be balanced against the ICE FOIA Office's current workload, and Defendants respectfully submit that an aggressive processing rate of 1,500 pages per month strikes an appropriate and workable balance.

Plaintiff also argues, without support, that the high number of outstanding pages to review justifies a faster pace of review in this case. See Dkt. 43 at 23 (distinguishing *American Immigration Council v. DHS*, 470 F. Supp. 3d 31 (D.D.C. 2020)). But the opposite is true. The more pages ICE FOIA's Office is required to review in a given case at a specified rate, the more resources it needs to divert from other FOIA cases. In other words, a processing rate of 3,000 or 1,500 pages per month for a 3,000-page collection is far less disruptive than such rates for an 18,000-page collection. See, e.g., *Middle E. Forum v. U.S. Dep't of Homeland Sec.*, 297 F. Supp. 3d 183, 185-86 (D.D.C. 2018) (ordering 500 pages per month and rejecting plaintiffs' request for 1,000 pages per month for FOIA request involving "over 27,000 potentially responsive documents");

*Daily Caller News Foundation v. FBI*, 387 F. Supp. 3d 112, 121 (D.D.C. 2019) (rejecting request to process 1,200 pages per month and requiring 500 pages per month for FOIA request involving "7,000 potentially responsive documents"); *Republican Nat'l Committee v. U.S. Dep't of State*, 2016 WL 9244625, at *1 (D.D.C. Sept. 16, 2016) (500 pages per month in case where "roughly 10,800 pages of materials still remain unprocessed" and "Defendant's productions might not finish until [almost two years]").

And here, Plaintiff has a role to play in the number of outstanding pages. ICE processed all of the redbooks requested (190 redbooks and 1,713 pages), and a response letter concerning the redbooks issued on December 1, 2021. Plaintiff then demanded *every exhibit* to *every redbook*. To date, ICE has process 2,230 pages of redbook exhibits. Undersigned counsel has asked Plaintiff on at least two occasions to review the exhibits to the redbooks and inform Defendants whether Plaintiff requires *every exhibit* to *every redbook* or whether it can narrow the universe of redbook exhibits it requires ICE's FOIA Office to review. Plaintiff has had *every* redbook in its possession since December 1, 2021, each of which includes a descriptive list of its exhibits. If Plaintiff is willing to narrow the request, ICE can provide a faster response in this case.

### C. There Was No Undue Delay with The Redbook Request ("Sixth FOIA Request")

Contrary to Plaintiff's assertions, processing of the exhibits to the redbooks has not been unduly delayed. The Sixth FOIA Request was submitted on June 29, 2020. A final response was issued on March 10, 2021, which consisted of a spreadsheet identifying the 190 redbooks responsive to the request. Plaintiff was unsatisfied with the response, and undersigned counsel therefore informed Plaintiff that it needed to administratively appeal the decision. On April 14, 2021, Plaintiff administratively appealed the decision, but its appeal made no mention of exhibits to redbooks. In June and July 2021, ICE and undersigned counsel informed Plaintiff that ICE would be processing the redbooks. Plaintiff then filed an amended complaint on August 23, 2021, to add the Redbook Request, all the while Defendant was in good faith attempting to

comply. On September 23, 2021, ICE released its first installment of the redbooks. On September 30, 2021, Plaintiff indicated for the first time that it wanted the exhibits in addition to the redbooks themselves, and on October 8, 2021, ICE promptly agreed to process the redbook exhibits. In short, ICE has not delayed review of the approximately 18,000 pages of redbook exhibits. Rather, Plaintiff requested, and ICE promptly agreed to process, the redbook exhibits at issue very recently, and ICE is currently working on processing them with all deliberate speed.

Plaintiff also complains about referrals that were previously made for *other* FOIA requests at issue in this litigation, and delays concerning those *other* FOIA requests. But the referral processes and purported delays for those other FOIA requests are largely complete, and they are irrelevant for present purposes: the processing of the remaining redbook exhibits. The redbook exhibits have not been referred to other agencies and remain under review by ICE's FOIA Office, subject to the limitations currently facing it. And as noted above, ICE has not delayed processing of the redbook exhibits themselves.[1]

### D. Adjusting the Pace Would Not Prejudice Plaintiff

Plaintiff correctly points out that the requested modification would likely push back the timeframe for summary judgment motions. But Plaintiff does not explain why the summary judgment "schedule is critical." Dkt. 43 at 27. Defendants expect that Plaintiff will meet and confer with Defendants in good faith concerning the FOIA requests at issue in this litigation in order to resolve them informally and narrow or eliminate the issues needed to be resolved on summary judgment. With the exception of the redbook exhibit portion of the Sixth FOIA request, those meet and confers can

---

[1] None of the cases Plaintiff cites in its opposition supports the proposition that an agency's delays in processing other FOIA requests are relevant for purposes of determining a processing deadline for a FOIA request at issue. *See Long v. IRS*, 693 F.2d 908, 910 (9th Cir. 1982) (processing schedule not at issue); *Clemente v. FBI*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014) (considering only the delay in responding to the request at issue); *Electronic Privacy Info. Ctr.*, 416 F. Supp. 2d 30, 38-40 (D.D.C. 2006) (same); *Open Society Justice Initiative v. CIA*, 399 F. Supp. 3d 161, 169 (S.D.N.Y. 2019) (same).

5

commence far in advance of the currently anticipated summary judgment deadlines or the summary judgment deadlines that would follow Defendants' proposed scheduling order modification. In other words, a delay in summary judgment deadlines does not equate to a delay in resolution.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court modify the Scheduling Order (Dkt. 35) to require the processing of 1,500 pages per month and to complete all review by December 2, 2022.

Dated: February 18, 2022

TRACY L. WILKISON
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section

 /s/ Matthew J. Smock
MATTHEW J. BARRAGAN
MATTHEW J. SMOCK
Assistant United States Attorneys

Attorneys for Defendants
U.S. Department of Homeland Security, DHS Office of Inspector General, and U.S. Immigration and Customs Enforcement